# 21-2262

United States Court of Appeals
for the Second Circuit

ELISA W.; ALEXANDRIA R., by her next friend ALISON MAX
ROTHSCHILD; THIERRY E., by his next friend MICHAEL B.
MUSHLIN; LUCAS T., XIMENA T., JOSE T.C. and VALENTINA
T.C., by their next friend RACHEL FRIEDMAN; AYANNA J.,
by her next friend MEYGHAN MCCREA; OLIVIA and ANA-
MARIA R., by their next friend DAWN CARDI; XAVION M., by
his next friend REVEREND DOCTOR GWENDOLYN HADLEY-
HALL; TYRONE M., by his next friend BISHOP LILLIAN
ROBINSON-WILTSHIRE

*(caption continued on next page)*

On Petition to Appeal from the United States District Court
for the Southern District of New York

**ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO
APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

GEORGIA M. PESTANA
*Corporation Counsel
of the City of New York*
Attorney for City of New York
100 Church Street
New York, New York 10007
212-356-2490 or -2502
jdavies@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
JAMISON DAVIES
  *of Counsel*

October 7, 2021

Reproduced on Recycled Paper

BRITTNEY W., by her next friend, SHAMARA MILLS;
MIKAYLA G., by her next friend, MICHAEL B. MUSHLIN;
MYLS J. and MALIK M., by their next friend ELIZABETH
HENDRIX; and EMMANUEL S. and MATTHEW V. by their
next friend, SAMUEL D. PERRY, individually and on behalf
of a class of all others similarly situated,

*Plaintiffs-Petitioners,*

*against*

THE CITY OF NEW YORK, SHEILA J. POOLE, ACTING
COMMISSIONER OF THE NEW YORK STATE OFFICE OF
CHILDREN AND FAMILY SERVICES, in her official capacity,

*Defendants-Respondents,*

*and*

NEW YORK CITY ADMINISTRATION FOR CHILDREN'S
SERVICES, STATE OF NEW YORK, NEW YORK STATE OFFICE
OF CHILDREN AND FAMILY SERVICES, and DAVID HANSEL,
COMMISSIONER OF THE NEW YORK CITY ADMINISTRATION
FOR CHILDREN'S SERVICES, in his official capacity,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF THE CASE ................................................................. 3

    A. Plaintiffs' complaint challenging various aspects of New York City's foster care system ..................................................... 3

    B. The district court's two orders denying class certification ........ 6

REASONS TO DENY THE PETITION ................................................... 9

    A. Interlocutory appeal is unwarranted under the "death knell" test. ...................................................................... 10

       1. Plaintiffs misunderstand and cannot satisfy the death-knell requirement................................................................. 10

       2. The district court correctly held that plaintiffs had not shown commonality or typicality.......................................... 13

    B. Plaintiffs point to no legal question for which there is a compelling need for immediate resolution................................ 23

CONCLUSION ...................................................................................... 25

CERTIFICATE OF COMPLIANCE ....................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Arab Bank, PLC Alien Tort Statute Litig.*,
  808 F.3d 144 (2d Cir. 2015) ................................................................ 19

*Blair v. Equifax Check Servs.*,
  181 F.3d 832 (7th Cir. 1999) ........................................................ 11, 12

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) (per curiam) ........................................... 9

*Marisol A. ex rel. Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) (per curiam) .............................. 18, 19, 22

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................. 14

*Genesis HealthCare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ............................................................................... 13

*Lienhart v. Dryvit Sys.*,
  255 F.3d 138 (4th Cir. 2001) .............................................................. 11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  289 F.3d 98 (D.C. Cir. 2002) .............................................................. 11

*Norton v. Sam's Club*,
  145 F.3d 114 (2d Cir. 1998) ............................................................... 23

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................... 21

*In re Sumitomo Copper Litig.*,
  262 F.3d 134 (2d Cir. 2001) ....................................................... *passim*

*Taylor v. Zucker*,
  2015 U.S. Dist. LEXIS 98877 (S.D.N.Y. July 27, 2015) ..................... 19

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*United States Parole Comm'n v. Geraghty,*
  445 U.S. 388 (1980) ..................................................................... 12, 13

*Vallario v. Vandehey,*
  554 F.3d 1259 (10th Cir. 2009) ............................................................ 9

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................... *passim*

**Statutes**

28 U.S.C. § 1291 ............................................................................. 10

New York Family Court Act § 1089 ........................................................... 5

**Other Authorities**

Fed. R. Civ. P. 23(a) ......................................................................... 14

Fed. R. Civ. P. 23(c) ......................................................................... 21

Fed. R. Civ. P. 23(f) ................................................................... *passim*

# PRELIMINARY STATEMENT

Plaintiffs, 19 children who have been in New York City's foster care system, brought this putative class action challenging numerous aspects of the administration of that system. Plaintiffs sought to certify a broad class of all children who are or will be in foster care, along with two subclasses of children who are subject to particular policies. The U.S. District Court for the Southern District of New York (Wood, J.) denied plaintiffs' motion for class certification, and plaintiffs filed this petition under Federal Rule of Civil Procedure 23(f) seeking the extraordinary relief of immediate review of the certification decision.

This Court should deny plaintiffs' petition. To succeed on a petition under Rule 23(f), a petitioner must show (1) that the class certification decision will effectively terminate the case for reasons unrelated to the merits and that the decision is questionable, or (2) that the petition implicates a novel question of class-action law requiring immediate resolution. Plaintiffs make neither showing.

To start, plaintiffs do not, and cannot, establish that the denial of class certification will end the litigation short of an appealable final judgment. This test requires a showing that the decision will effectively

prevent entry of a final judgment because—when class certification has been denied—the plaintiff will be unable to pursue the case on an individual basis. This is not the situation here. Plaintiffs and their counsel have the ability, and every reason, to continue to litigate this case to a final judgment after their investment of six years of time and effort. Without a showing that the case is likely to end before a final judgment, plaintiffs cannot justify immediate appeal.

Moreover, the district court's decision is sound. The court denied plaintiffs' motion on the basis that plaintiffs could not demonstrate commonality and typicality. The gravamen of plaintiffs' allegations is that the length of time children spend in foster care is harmful and that ACS has failed to enact policies that plaintiffs contend would speed the resolution of children's cases or improve foster care itself. Plaintiffs attempted to cast those purported failures as ACS "policies" that apply to all foster children and sought to enact their preferred version of the foster care system via court order, notwithstanding the disagreement of advocates who actually represent parents and children in that system.

Analyzing the particularities of foster care in New York City, the district court correctly concluded that each child's case will be affected

by numerous decisions, most outside the control of any of the defendants here, precluding the generation of the types of common answers needed to maintain a class action. Plaintiffs fail to account for the significant role of other actors in the system, including foster care agencies and the advocates and judges in New York Family Court. That failure precludes tracing any child's alleged injury from being in foster care to a purported ACS policy and renders it impossible to prove, on a classwide basis, that children in foster care are harmed by, or even face a risk of harm from, the practices plaintiffs challenge.

Finally, while plaintiffs assert in passing that their petition raises a novel question of class-action law requiring immediate resolution, they devote no argument to the point, and instead contradict it by contending that the district court's error was its failure to apply settled law.

## STATEMENT OF THE CASE

### A. Plaintiffs' complaint challenging various aspects of New York City's foster care system

This action was brought on behalf of 19 children who have been in foster care in New York City (S.D.N.Y. ECF No. 91). The complaint alleges a number of constitutional and statutory claims against New York City and New York State, all centered on the assertion that

purported systemic failures in the foster care system have violated the rights of plaintiffs and of all other children in that system, whom they hope to represent on a classwide basis.

The City's foster care system is administered by the New York City Administration for Children's Services (ACS). Two aspects of the system are particularly relevant to this petition. First, in New York City, starting in 2009 and with the approval of the state regulator, ACS implemented an initiative to delegate management of individual cases to "Contract Agencies." ACS currently contracts with 26 Contract Agencies, which deliver the day-to-day services to meet the needs of children and families (S.D.N.Y. ECF No. 490 ¶¶ 4–5; S.D.N.Y. ECF No. 498 ¶ 7). The Contract Agencies employ their own caseworkers, assuming the primary responsibility for managing a child's case, with ACS exercising an oversight role and monitoring the agencies' performance (S.D.N.Y. ECF No. 490 ¶¶ 4–5).

Second, New York State is unusual because of the intensive and active supervision of cases by the New York Family Court. A child removed from parental custody remains under the family court's jurisdiction until achieving a permanent outcome. Within eight months

of a child's removal, and approximately every six months thereafter, the family court holds a "permanency" hearing, where it examines progress toward a permanent placement, reviews any issues in the child's care, education and other circumstances in the child's current placement, and issues any orders needed to assist in achieving a permanent placement for the child. *See* N.Y. Fam. Ct. Act §§ 1089(a), (c). The family court is thus intimately involved in the details of each child's case. Proceedings in family court tend to be highly contested. And, because parents and children are guaranteed counsel, and each order in an abuse or neglect matter may be appealed to the Appellate Division, the litigation may be active and protracted at both the family court and appellate levels (*see* S.D.N.Y. ECF No. 507 at 4–11).

Plaintiffs allege that New York City's foster care system deprives them of various constitutional and statutory rights and that all children in the system are harmed by alleged systemic deficiencies (*see generally* S.D.N.Y. ECF No. 91). In particular, they contend that ACS has failed to adequately oversee the Contract Agencies, failed to impose training requirements, and failed to ensure proper foster care placements, among other things (S.D.N.Y. ECF No. 440 at 13–32). And plaintiffs allege that

these failures result in delays in achieving permanency and an increased risk of maltreatment for children in foster care (*id.* at 32–40).

## B. The district court's two orders denying class certification

In 2015, plaintiffs moved to certify a class of all "children who are now or will be in the foster care custody of the Commissioner of New York City's Administration for Children's Services" (S.D.N.Y. ECF No. 75). The district court[1] noted that evidence proffered by defendants called into question the "reliability of the specific factual assertions in the Amended Complaint" and whether plaintiffs' "broad assertions" about problems in the foster care system are "central common factual issues that can be addressed with the sort of 'one-stroke' determination that is contemplated by the class action mechanism" (S.D.N.Y. ECF No. 282 at 2–3). Moreover, the court noted the "dearth even of allegations concerning case work and conditions at most of the separate third-party agencies" (*id.* at 3). As the court explained, the "very breadth of the common questions" as framed by plaintiffs undermined their ability to

---

[1] Then-Chief Judge Swain was presiding over the case at the time of the initial denial. The case was transferred to Judge Wood in July 2020.

"demonstrate that certification of a broad unitary class of children who are or will be in foster care is appropriate" (*id.*). The court thus denied the motion for class certification without prejudice to renewal if a more developed evidentiary record showed that certification was appropriate.

After significant discovery, plaintiffs renewed their motion, this time asking for certification of the same broad class as before, plus two subclasses of children who were subject to particular policies. The City and the State opposed the motion, as did organizations representing parents of children in the foster care system (S.D.N.Y. ECF No. 531). Groups advocating for both parents and children in the foster care system have opposed plaintiffs' position over the course of the litigation (*see* S.D.N.Y. ECF Nos. 180–85, 187–88, 202).

In the order at issue here, the district court again denied plaintiffs' motion, concluding that plaintiffs had not demonstrated commonality or typicality under Federal Rule of Civil Procedure 23(a) (S.D.N.Y. ECF No. 542 ("Order") 16–24). As to commonality, the court explained that the common questions plaintiffs contended are amenable to classwide resolution are "too broad and generalized" (*id.* at 17). Commonality requires a showing that plaintiffs have "suffered the same

injury," which is distinct from merely alleging that they "suffered a violation of the same provision of law" (*id.* (quotation marks omitted)). In this case, there are "myriad reasons" that children might suffer a delay in their path to permanency, many of which are out of the control of ACS, and these wide-ranging causes preclude resolution of the claims "in one stroke" (*id.* at 18). Likewise, the departures from ACS policy on which plaintiffs base their common questions "are case-specific, stemming from the actions of individual case workers, individual Contract Agencies, or external factors (such as the New York State Family Court system)" (*id.* at 19). The role of family court, in particular, creates "dissimilarities within the proposed class that impede the generation of common answers" (*id.* (quotation marks omitted)).

The court also concluded that plaintiffs failed to establish typicality. The various reasons why a particular child might spend extended time in foster care, for example, meant that plaintiffs' claims cannot be said to arise from the same course of events as those of other children in the proposed class (*id.* at 22). Instead, evaluating what happened to any given child requires consideration of "all of the other contributing facts and influences," including the availability of housing

assistance, mental health treatment, and substance abuse counseling for the parents (*id.* at 22–23).

## REASONS TO DENY THE PETITION

Interlocutory appeal under Federal Rule of Civil Procedure 23(f) is disfavored, and the standard for granting a Rule 23(f) petition "will rarely be met." *In re Sumitomo Copper Litig.*, 262 F.3d 134, 140 (2d Cir. 2001); *see also Vallario v. Vandehey*, 554 F.3d 1259, 1263 (10th Cir. 2009) (grant of a Rule 23(f) petition is "the exception rather than the rule" (quotation marks omitted)); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005) (per curiam) ("Rule 23(f) review should be a rare occurrence."). This high bar "prevent[s] the needless erosion of the final judgment rule and the policy values it ensures," recognizes the appellate courts' limited capacity to consider piecemeal appeals, and respects the district court's institutional advantage in managing class litigation. *Sumitomo*, 262 F.3d at 140.

Under this Court's *Sumitomo* decision, a Rule 23(f) petitioner may obtain interlocutory review in two ways. First, the petitioner may demonstrate that the class certification ruling sounds the "death knell" of the litigation *and* make a "substantial showing that the district

court's decision is questionable," taking into account the considerable discretion of the district judge in implementing Rule 23 and the correspondingly deferential standard of appellate review. *Sumitomo*, 262 F.3d at 139. Second, the petitioner may show that the decision "implicates a legal question about which there is a compelling need for immediate resolution." *Id*. The petition here passes neither test.

## A. Interlocutory appeal is unwarranted under the "death knell" test.

### 1. Plaintiffs misunderstand and cannot satisfy the death-knell requirement.

Generally, litigants may appeal only from final judgments. 28 U.S.C. § 1291. Rule 23(f), a limited exception to that general policy, recognizes that in some circumstances a decision on class certification may sound the "death knell" for a case, precluding it from ever reaching an appealable final judgment. *See Sumitomo*, 262 F.3d at 138. The class certification decision here does not sound the death knell for this litigation. That, by itself, is a sufficient basis on which to deny the petition.

Plaintiffs misunderstand this aspect of the test for granting a Rule 23(f) appeal. The question is not whether, as they put it, the class

certification decision terminates the putative class's ability to "obtain relief" (Plaintiffs' Rule 23(f) Petition ("Pet'n") 9). The question is whether the decision makes it impossible or exceedingly unlikely for the case to terminate in a final, appealable judgment because "the denial of certification makes the pursuit of individual claims prohibitively expensive or because the grant of certification forces the defendants to settle." *Sumitomo*, 262 F.3d at 138; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99 (D.C. Cir. 2002) (holding that Rule 23(f) requires "a death-knell situation … that is independent of the merits of the underlying claims").

Here, plaintiffs have made little effort to demonstrate that the case is unlikely to reach a final, appealable judgment if this Court does not grant their petition. As plaintiffs note, their counsel has engaged in significant efforts over the six-year course of this case (Pet'n 9), and it is unlikely they will elect to end the litigation short of the entry of a final judgment. *See Blair v. Equifax Check Servs.,* 181 F.3d 832, 834 (7th Cir. 1999) (noting that attorneys may act as "champions of the class" who will continue to prosecute the case to final judgment in the hope of "winning class certification … on appeal"); *Lienhart v. Dryvit Sys.*, 255

F.3d 138, 143 (4th Cir. 2001) (explaining that "law firms with substantial resources may pursue an individual claim to final judgment in the hope of winning a favorable ruling on class certification on appeal"). Thus, this is precisely the type of case where, as the Seventh Circuit warned, the Court should be "wary lest the mind hear a bell that is not tolling." *Blair*, 181 F.3d at 834.

To satisfy *Sumitomo*'s death-knell requirement, plaintiffs must show that some extrinsic consideration, such as the economic nonviability of an individual claim, would preclude litigation to final judgment. Here, the case was never about aggregating low-value claims for money damages—the prototypical death-knell situation—but rather about obtaining broad injunctive relief and potential attorney's fees.

It is of no moment that, as plaintiffs argue, the claims of the named plaintiffs are likely moot because all the named plaintiffs have exited the foster care system during the course of this litigation (Pet'n 9). If the action were to result in a final judgment on the ground of mootness, plaintiffs could raise the class certification denial on appeal from that judgment because "[t]he proposed representative retains a 'personal stake' in obtaining class certification." *United States Parole*

*Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980). A plaintiff may pursue, on appeal, a reversal of the denial of the class certification motion even where their personal claims have expired. *Id.* at 398; *see also Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 n.2 (2013). Plaintiffs' references to mootness only tend to confirm that they will have avenues for challenging the class certification ruling in an ordinary-course appeal, rendering resort to Rule 23(f)'s extraordinary interlocutory mechanism unnecessary.

### 2. The district court correctly held that plaintiffs had not shown commonality or typicality.

Plaintiffs also have not shown a substantial question as to the correctness of the district court's decision. In undertaking that analysis, this Court's determination is tempered by the recognition that "the district court is often in the best position to assess the propriety of the class." *Sumitomo*, 262 F.3d at 139. Here, the district court correctly reasoned that the proposed class of all children who are now or ever will

be in the foster care custody of the Commissioner of ACS lacked the required elements of commonality and typicality.[2]

Commonality requires class plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court explained in clarifying Rule 23's commonality inquiry, it is not enough to identify some circumstance the members of the proposed class have in common, such as being in the foster care system, because any "competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quotation marks omitted). Rather, commonality requires plaintiffs "to demonstrate that the class members have suffered the same injury." *Id.* at 350 (quotation marks omitted). And this does not mean "merely that they have all suffered a violation of the same provision of law." *Id.* Instead, there must be a common contention that is capable of classwide resolution, such that its "truth or falsity will

---

[2] Because the commonality and typicality requirements "tend to merge," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982), this memorandum focuses on the proposed class's lack of commonality. As the district court correctly found, plaintiffs' claims are not typical for many of the same reasons they are not common to the proposed class (Order 22–23).

resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The party seeking class certification bears the burden of proving that all of its elements are met "in fact," and certification is proper only if the district court is persuaded, "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (quotation marks omitted). The requisite "rigorous analysis" will often "entail some overlap with the merits of the … underlying claim." *Id.* at 351.

In this lawsuit, plaintiffs allege that ACS has failed to enact a number of policies that would reflect plaintiffs' preferences for running the foster care system. Among other things, plaintiffs argue that ACS has failed to mandate training requirements for Contract Agencies or to enact certain policies regarding initial foster care placements (S.D.N.Y. ECF No. 440 at 50–51). In turn, they contend that these alleged failures increase a child's time in the foster care system and increase the risk of maltreatment while in the system (*id.* at 32–40). Thus, as plaintiffs would have it, the failures they identify amount to common ACS

"policies" that subject children to a risk of future harms that form a common basis of fact for class litigation.

But, as the district court recognized, given the nature of New York City's foster care system, there are "myriad" factors affecting a child's experience in foster care or how long it takes for a child to receive a permanent placement, and many of those factors are "beyond the control of ACS" (Order 18). As the City demonstrated with expert testimony, and the district court found, two features of the foster care system most significantly complicate the inquiry. One is that day-to-day responsibility for oversight of children in foster care is in the hands of 26 Contract Agencies, which are supervised by ACS and, in turn, by the State (*id.* at 3–5, 21). The other is that the family court plays a pervasive role in foster care: the court exercises significant ongoing supervision of children in foster care, children and parents are guaranteed counsel in family court, and every family court order is appealable, resulting in often protracted litigation over placements (*id.* at 6–7, 19). Particularly in light of these features, any alleged harm that a given child experiences may be traceable to a number of discretionary decisions made in the course of each child's case by parents, the family

court, and the children themselves. The differential effects of these many decisions create "dissimilarities within the proposed class" that "impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted); *see id.* at 352 (explaining that, without some basis for considering the "*reasons* for all th[e challenged] decisions together," it will be impossible to "produce a common answer to the crucial question").

To take one example, plaintiffs contend that ACS fails to exercise "meaningful oversight" over Contract Agencies (Pet'n 6). Tracing a purported lack of oversight to the appropriateness of a child's foster care placement or the duration of any particular child's stay in foster care would require consideration of the varying ways that ACS oversees each of the 26 Contract Agencies and how the level of oversight affected the process of placing and achieving permanency for that child. It would also require separating out the influence of all of the other factors that could have affected the foster care placement. That inquiry is so child-specific that it could not yield a common answer for all members of the proposed class.

Plaintiffs' claims suffer from a further infirmity. The "policies" plaintiffs identify are based on ACS's purported failures to live up to what they believe would be the ideal foster care system (Pet'n 17). Merely setting forth a list of ideals—untethered to any statutory or constitutional right—and contending that ACS fails to meet them does not create a coherent class whose legal claims may be resolved "in one stroke." *Wal-Mart*, 564 U.S. at 350. Plaintiffs bear the burden of showing that these purported departures from their conception of ideal practice create a common legal injury capable of classwide resolution, and they have not done so.

Plaintiffs' challenge to the district court's decision centers on a supposed conflict with this Court's decision in *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) (per curiam). There, this Court affirmed certification of a broad class of children who were or would be in ACS's custody because of abuse or neglect reports or who were at risk of abuse or neglect and whose status should have been known to ACS. *Id.* at 375. Despite affirming the order certifying the class, the Court recognized that the "generalized characterization of the claims raised by the plaintiffs stretches the notions of commonality and typicality" and

that the "district court is near the boundary of the class action device." *Id.* at 377. The Supreme Court's subsequent decision in *Wal-Mart* clarified that such a broad and generalized class is not near that boundary, but instead beyond it—crossing, as one court has phrased it, into "forbidden territory." *Taylor v. Zucker*, 2015 U.S. Dist. LEXIS 98877, at *31 (S.D.N.Y. July 27, 2015); (Order 23 n.10).[3]

*Marisol A.* is in any event distinct from this case. In *Marisol A.* this Court applied heightened deference to the district court's decision because the district court there had certified the class. As this Court explained, a class certification decision "will be overturned only if the district court abused its discretion," and the appellate court "must exercise even greater deference when the district court has certified a class." *Marisol A.*, 126 F.3d at 375. Even applying a highly deferential standard of review, this Court still concluded that the class was at the outer limit of commonality and typicality and that the class could not survive without subdivision. *Id.* Here, by contrast, the district court

---

[3] Plaintiffs argue that "*Wal-Mart* did not overrule *Marisol*" (Pet'n 12). While it's true that *Wal-Mart* did not formally abrogate *Marisol A.*, it clarified and heightened the standards for commonality and so "casts doubt" on *Marisol A.*'s continuing validity as to its commonality analysis. *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 154–55 (2d Cir. 2015) (quotation marks omitted).

denied certification, and a similar application of the abuse of discretion standard would counsel affirmance.

Plaintiffs next argue that the district court's decision conflicts with out-of-circuit authority (Pet'n 13). At the outset, they do not explain how the court's purported failure to follow this authority, by which neither it nor this Court are bound, renders the decision erroneous. Beyond that basic jurisprudential fact, the primary case on which plaintiffs rely supports the district court's decision not to certify a class here. In *B.K. v. Snyder*, the Ninth Circuit explained that "commonality cannot be determined without a precise understanding of the nature of the underlying claims." 922 F.3d 957, 968 (9th Cir. 2019) (quotation marks omitted). Here, plaintiffs make no attempt to link their purported common questions of fact to the constitutional and statutory claims they press, instead relying on a generalized "increased risk of harm" (Pet'n 14). But the mere allegation that there is a risk of some amorphous harm is not sufficient—plaintiffs must explain, at a minimum, what specific harm they are alleging, how the practices they challenge increase the risk of that harm, and the basis of their legal claim to a remedy reducing that risk. *See B.K.*, 922 F.3d at 969 (holding

that the relevant commonality question is whether class members have been injured by the same practices). They have not done so.

Finally, plaintiffs challenge the district court's decision not to separately analyze plaintiffs' proposed subclasses (Pet'n 21–23). Notably, they cite nothing suggesting that a failure to separately analyze proposed subclasses is error, let alone the type of error justifying an immediate appeal under Rule 23(f).[4] Moreover, the district court's commonality reasoning is equally applicable to the subclasses. Despite being subsets of the broader class, each member of the proposed subclasses is subject to the same system, and their case is influenced by the decisions of the same actors—the Contract Agencies, lawyers representing the children and parents, and the family court—that render the broader class uncommon. Nothing about the subclasses is distinct except for the particular policies they seek to challenge. And plaintiffs bear the burden of showing that each subclass independently satisfies the elements of Rule 23. Fed. R. Civ. P. 23(c)(5) (providing that

---

[4] Indeed, in the one case on which they rely, commonality was not at issue and this Court did not reverse the district court's certification decision for failing to consider subclasses, but for failing to "define the class" to exclude individuals with no viable claims, among other reasons. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

each subclass must be treated "as a class under this rule"); *see also Marisol A.*, 126 F.3d at 378–79. Here, they do not even attempt to explain how the subclasses meet Rule 23's requirements (*see* Pet'n 21–23).

Indeed, despite criticizing the district court's lack of analysis as to the subclasses, plaintiffs themselves offered almost nothing before the district court to support their certification. In their opening memorandum in support of class certification, they devoted no separate argument as to the propriety of the subclasses (*see generally* S.D.N.Y. ECF No. 440). When that failing was pointed out in the defendants' responses, plaintiffs attempted to salvage their argument in reply largely by adding the words "(and Subclasses)" to their argument headings (*see* S.D.N.Y. ECF No. 533 at i), but still failed to adduce any nonconclusory argument as to why the subclasses independently meet Rule 23's requirements (*see id.* at 7–30). The district court can hardly be faulted for declining to engage in an analysis of potential subclasses that plaintiffs themselves did not perform.

### B. Plaintiffs point to no legal question for which there is a compelling need for immediate resolution.

The Court may also grant leave if the petition implicates a "novel legal question" about which there is a "compelling need for immediate resolution." *Sumitomo*, 262 F.3d at 139–40. The legal question must be "of fundamental importance to the development of the law of class actions" and "likely to escape effective review after entry of final judgment." *Id.* at 140. While plaintiffs mention this alternative basis for Rule 23(f) review in passing (Pet'n 10), they fail to address the relevant test and, consequently, develop no argument either that the legal questions raised by the petition are novel, fundamental to the development of the law of class actions, or that they will not be likely to escape effective review on appeal from a final judgment. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (holding that issues "not sufficiently argued" are "considered waived").

Moreover, the petition does not present any novel question that is fundamental to the development of class actions or that could not be reviewable on appeal from a final judgment. The district court's decision applied settled law to the facts of this case, and its decision does not

implicate any unsettled or undeveloped areas of class action jurisprudence. Indeed, plaintiffs' main argument is that the district court erred by "failing to apply settled law" (Pet'n 10 (capitalization omitted)). Plaintiffs' disagreement with the district court's decision will also be reviewable on appeal from a final judgment, and they therefore fail the "compelling need" test on all fronts.

# CONCLUSION

Plaintiffs' petition to appeal under Rule 23(f) should be denied.


Dated:   New York, NY
             October 7, 2021

                                    Respectfully submitted,

                                    GEORGIA M. PESTANA
                                    *Corporation Counsel*
                                    *of the City of New York*
                                    Attorney for City of New York


                              By:   /s/ Jamison Davies
                                    JAMISON DAVIES
                                    Assistant Corporation Counsel

                                    100 Church Street
                                    New York, NY 10007
                                    212-356-2490
                                    jdavies@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
JAMISON DAVIES
    *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 4,802 words, not including the table of contents, table of authorities, this certificate, and the cover.

/s/ Jamison Davies
JAMISON DAVIES
